Jennifer Duke Isaacs
Georgia Bar No.: 902511
Melville Johnson, P.C.
115 West Peachtree Place, NW, Unit 1
Atlanta, GA 30313
Telephone: 404-724-0000
Email: jduke@melvillejohnson.com

George Melville Johnson
Georgia Bar No.: 393505
Melville Johnson, P.C.
115 West Peachtree Place, NW, Unit 1
Atlanta, GA 30313
Telephone: 404-724-0000
Email: gjohnson@melvillejohnson.com

Attorneys for Plaintiff[1]
Estate of Douglas Pherson

**FILED**

**4:03 pm, 5/18/20**

**Margaret Botkins**
**Clerk of Court**

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE ESTATE OF DOUGLAS PHERSON, )<br>)<br>PLAINTIFF, )<br>)<br>v. )<br>)<br>UNITED STATES DEPARTMENT OF )<br>HOMELAND SECURITY, )<br>CHAD F. WOLF, ACTING SECRETARY )<br>(Sued in his official capacity) )<br>)<br>DEFENDANT. )<br>_____ ) | Case No.: 20-CV-82-S<br>_____<br><br>**COMPLAINT AND JURY DEMAND** |

---

[1] Plaintiff's attorney is not a member of the US District Court for the District of Wyoming, but is in the process of associating local counsel and applying for admission pro hac vice. Plaintiff's Counsel will update this information within 14 days of filing pursuant to Local Rule 84.2.

COMES NOW, Plaintiff, The Estate of Douglas Pherson, through his father, James Pherson, the Executor of Plaintiff's estate, by and through his attorneys, Jennifer D. Isaacs, and George Melville Johnson, and for his complaint against the Defendants states and alleges as follows:

## I. PARTIES

1.     Plaintiff, the Estate of Douglas Pherson, is represented by James Pherson, the Executor of the Estate.  Mr. James Pherson is a male citizen and resident of Plametto Bay, Florida, in the county of Miami-Dade.  He is the late Douglas Pherson's father, and the Executor of Douglas Pherson's estate.  Prior to his passing, on April 5, 2018, Mr. Douglas Pherson ("D. Pherson") was a male citizen, and resident of Rock Springs, Wyoming, in the county of Sweetwater.  At all times relevant to this matter, Mr. Douglas Pherson was employed by the United States Department of Homeland Security, Transportation Security Administration, from 2010, until his removal effective July 2, 2014.

2.     Defendant, United States Department of Homeland Security is a cabinet department of the United States Federal Government with responsibilities in public security. The Department works to improve the security of the United States, and its work includes customs, border, and immigration enforcement, emergency response to natural and manmade disasters, antiterrorism work, and cybersecurity.  The Transportation Security Administration ("TSA"), where Pherson worked at the time he was subjected to discrimination, is a Sub-Agency of the Department of Homeland Security, specifically tasked with protecting the nation's transportation systems to ensure freedom of movement for people and commerce. Pherson specifically worked for TSA at the South Wyoming Regional Airport, ("KRKS"), located at 382 WY-370, Rock Springs, WY, 82901, in the county of Sweetwater.

## II. JURISDICTION AND VENUE

3.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., as amended, as applied to the Federal government and the interpretation of its statutes, and pursuant to the Fourteenth Amendment to the United States Constitution.

4.      Jurisdiction of this Court is invoked pursuant to its original jurisdiction over cases and controversies arising under Federal law, pursuant to 28 U.S.C. § 1331.

5.      Venue herein is proper in this Court pursuant to 42 U.S.C. § 2000e- 5(f)(3), and 28 U.S.C. § 1331.  Defendant, United States Department of Homeland Security, and sub-agency Transportation Security Administration exist under the laws of the United States and the laws of the State of Wyoming.  The alleged wrongful acts of discrimination were committed in Rock Springs, Wyoming, in the District of Wyoming.

## III. PROCEDURAL HISTORY

6.      Defendant conducted a covert investigation at Rock Springs Airport (hereinafter "KRKS") between April 18, 2013, and April 24, 2014.

7.      Defendant placed D. Pherson on Indefinite Suspension on May 8, 2014.

8.      Defendant proposed D. Pherson's Removal from Federal Service on May 28, 2014, for one (1) charge of Failure to Follow Standard Operating Procedures, with nine (9) specifications.

9.      D. Pherson responded to the Proposed Removal.

10.     Defendant mailed D. Pherson a Notice of Removal on June 24, 2014, with an effective date of July 2, 2014.

11.     D. Pherson contacted Defendant's Headquarters and raised concerns about discrimination in an email on August 12, 2014.

11.     D. Pherson appealed his removal to Defendant's Office of Professional Responsibility

Appellate Board.

12.     Defendant upheld D. Pherson's removal.

13.     D. Pherson, through counsel, requested reconsideration of the Appellate Board's decision

on August 27, 2014.

14.     Defendant issued a Decision on Reconsideration, upholding D. Pherson's removal on

September 9, 2014.

15.     D. Pherson spoke with an Equal Employment Opportunity ("EEO") Counselor on

September 15, 2014.

16.     D. Pherson received a Notice of Right to File a Formal EEO Complaint on January 9,

2015, and filed a Formal EEO Complaint on January 22, 2015.

17.     Defendant dismissed D. Pherson's EEO Complaint for failure to make timely EEO

Contact on July 13, 2015.

18.     D. Pherson filed an appeal of the dismissal to the Equal Employment Opportunity

Commission ("EEOC") Office of Federal Operations ("OFO"), and on December 16, 2015, the

OFO issued a Decision reversing the dismissal.

19.     D. Pherson requested a Hearing with an EEOC Administrative Judge on June 9, 2016.

20.     D. Pherson passed away on April 5, 2018, and his father, as executor of his estate elected

to continue D. Pherson's case.

21.     Defendant filed a Motion for Summary Judgment on June 4, 2018.

22.     The EEOC Administrative Judge issued a Decision denying the Motion for Summary

Judgment on July 31, 2019.

23.     Administrative Judge Jacob Smiles, in the EEOC's Denver Field Office, held a hearing in the complaint on December 11, 2019.

24.     The EEOC Administrative Judge issued a Decision in favor of Defendant on January 11, 2020.

24.     Defendant issued its Final Order on February 18, 2020, providing Plaintiff with the right to file in the appropriate federal district court.

25.     Plaintiff has complied fully with all prerequisites to jurisdiction in the Court under Title VII and the jurisdiction of the Court is proper under 42 U.S.C. § 2000e-5(f)(3) and under 28 U.S.C. § 1331.

## IV. GENERAL ALLEGATIONS

26.     At all times relevant hereto, Plaintiff's Decedent, Douglas Pherson (hereinafter "D. Pherson") was employed by the United States Department of Homeland Security, and was a resident of Sweetwater County, State of Wyoming.

27.     At all times relevant hereto, Defendant, United States Department of Homeland Security, is a Federal Government Agency, doing business in the State of Wyoming.

## V. FACTS

28.     D. Pherson was appointed a D-Band Transportation Security Officer (TSO), at the Rock Creek-Sweetwater International Airport, in Rock Springs, Wyoming, effective October 24, 2010.

29.     TSA promoted D. Pherson to an E-Band TSO position effective November 4, 2012.

30.     Very small airports like Rock Springs, which have ten or fewer permanently employed screeners, often receive help during the peak or busy season through the Agency's National Deployment Office ("NDO").

31.     The NDO deploys screeners to various small airports for short periods of time to help cover staffing shortages during peak seasons.

32.     In March of 2014, an airline employee at Rock Springs informed Supervisory TSO ("STSO") James Connolly that she was concerned that checked baggage was not being properly screened, with specific reference to a Lead TSO ("LTSO") on a certain date and time.

33.     STSO Connolly and Transportation Security Manager ("TSM") Shawn Hamlin subsequently reviewed airport video and determined that the Lead TSO in question, Russell Walls, was not properly screening checked bags.

34.     TSM Hamlin then informed Federal Security Director ("FSD") for Wyoming, Rick Gordon, of Walls' failure to properly screen checked bags, and FSD Gordon, in turn, notified the Agency's Office of Inspections ("OOI") on April 10, 2014, that a Lead TSO in Rock Springs was not properly screening checked bags.

35.     OOI informed FSD Gordon on April 10, 2014, that they would investigate the Rock Springs baggage screening operation, and in accordance with FSD Gordon's instruction, coordinated the investigation directly with TSM Hamlin.

36.     In the early morning of April 18, 2014, OOI Special Agents installed a number of covert pinhole cameras in the baggage screening area at Rock Springs.

37.     After collecting video of the screening operations from April 18 through approximately April 23, 2014, OOI provided TSM Hamlin with the video and asked him to review the video for screening violations.

38.     During his review process TSM Hamlin reviewed the video and noted multiple violations of the screening procedures by multiple different officers.

39.     TSM Hamlin then created spreadsheets noting the date and time of violations, including the officer responsible for the violation. And the violation committed, which he then provided to OOI on May 7, 2014.

40.     During the first week of May, 2014, OOI conducted in-person interviews with the officers at Rock Springs over the course of several days.

41.     The OOI interviews included reviewing video of each of the subjects' performance in the presence of the TSOs and asking about specific instances of screening violations.

42.     TSO Travis Garrettson resigned on May 2, 2014, before OOI could interview him.

43.     During his interview by OOI in May of 2014, D. Pherson acknowledged deficiencies in his baggage screening captured on the covert surveillance and acknowledged that the familes constituted a violation of the Agency's Standard Operating Procedures ("SOP") for baggage screening.

44.     Following OOI's in-person interviews at Rock Springs, on or around May 8, 2014, FSD Gordon met separately with D. Pherson, STSO Connolly, and LTSO Walls, and informed each of them that he was considering putting them on indefinite suspension without pay pending completion of the investigation, but that he welcomed any oral or written response, and any mitigating or additional information that could inform his decision.

45.     D. Pherson provided a response to the proposed removal admitting that he had improperly screened baggage, stating that he had no excuses, and acknowledged that he had been properly trained and had passed his last certification on the first attempt, with no errors.

46.     On May 8, 2014, FSD Gordon placed D. Pherson on indefinite suspension, effective immediately, and denied Complainant's request to reconsider placing him on indefinite suspension.

47.     LTSO Walls was placed on indefinite suspension on May 8, 2014, and STSO Connolly

was placed on indefinite suspension on May 9, 2014.

48.     LTSO Walls subsequently resigned on May 13, 2014, and STSO Connolly resigned on

May 28, 2014, before they could be proposed for discipline.

49.     OOI created Reports of Investigation ("ROI") for five (5) TSOs following their

interviews of the TSOs, identified by TSM Hamlin as having violated the Agency's checked

baggage screening procedures.

50.     ROIs for potential discipline were created for STSO Connolly, LTSO Russell Walls, TSO

Travis Garrettson, D. Pherson, and STSO Sallie Holtz.

51.     STSO Holtz, who was a Nation Deployment Office officer, was originally scheduled to

be in Rock Springs from February 27 through March 21, 2014, and on March 20, 2014, her

deployment was extended to May 2, 2014.

52.     On May 16, 2014, FSD Gordon informed NDO Area Coordinator Judith Singleton about

the violation regarding STSO Holtz, and Ms. Singleton then notified FSD for Wisconsin, Louis

Traverzo.

53.     John Carlson, the Assistant Federal Security Director ("AFSD") – Generalist for Green

Bay, Wisconsin, issued STSO Holtz a Letter of Counseling on July 2, 2014, for failure to follow

SOP and inattention to duty.

54.     Jason Davis, Supervisory Transportation Security Manager ("STSM") in Wyoming

issued D. Pherson a Notice of Proposed removal, by mail, on May 28, 2014.  This proposal letter

contained one charge of Failure to Follow Standard Operating Procedures, containing nince

separate specifications for individual screening violations.

55.     The Notice of Proposed Removal noted that each of D. Pherson's screening failures alone could have resulted in disaster.

56.     In his response to the proposed removal, D. Pherson admitted to most of the allegations regarding his screening violations.

57.     FSD Gordon, in his Notice of Removal, mailed June 24, 2014, noted that there was no requirement of intent for a charge of failure to follow the SOP, and determined that the extreme egregiousness of D. Pherson's actions warranted D. Pherson's removal with an effective date of July 2, 2014.

58.     D. Pherson timely appealed his removal to the Agency's Office of Professional Responsibility Appellate Board, which is an independent body that adjudicates disciplinary actions for TSOs.

59.     D. Pherson, STSO Connolly, LTSO Walls, and TSO Garretson are all males.

60.     STSO Sallie Holtz and TSO Green are both females.

61.     D. Pherson passed away on April 5, 2018, as the result of medical complications unrelated to this complaint.

62.     TSA sometimes employs a gender-specific hiring preference to fill TSO positions.  This is supposedly justified by the need to meet same gender pat-down requirements.  This gender-based hiring preference extends to scheduling on a daily basis at airports where this is deemed necessary.

63.     While the Agency noted that intent was not a requirement for the charges against D. Pherson, in response to his appeal of the removal decision, Defendant noted that because D. Pherson had successfully passed his most recent baggage screening recertification, his actions must have been deliberate.

64.     Despite TSO Kimberlee Green also committing SOP violations, observed on camera, she

was not investigated, placed on leave, or issued any discipline, proposed or otherwise, for her

actions.

65.     TSO Green was offered re-training on baggage SOPs as a result of the violations she

committed.

66.     D. Pherson was not offered re-training, he was placed on immediate suspension and

removed.

67.     While D. Pherson's Notice of Proposed Removal identified nine (9) screening violations,

many of which were the same violation, repeated on different bags, the Deciding Official noted

that he considered the fact that D. Pherson committed more violations over the course of other

days, which were not identified in the Notice of Proposed Removal.

68.     Both D. Pherson and Green held collateral duties as On the Job Trainers to other TSOs on

the proper manual screening of checked bags in accordance with the SOP.

69.     At KRKS checked baggage must be screened through the ETD Protocol, which requires

manual screening consisting of a visual and tactile inspection of baggage conducted by TSOs,

along with a hand-held device to detect for explosives and explosive materials.

70.     Part of the ETD Protocol, Section 4.2.1(D), entitled Limited Open Bag Search, requires

that TSOs take ETD samples of the "interior bottom perimeter of the main compartment of the

baggage."

71.     The Agency accused D. Pherson of performing this task, but failing to reach the bottom

perimeter of the bag.

72.     During the covert surveillance, eight (8) employees were identified as having violated the

SOP, but only five (5) employees were investigated.  Of those five, the only female employee

investigated was STSO Holtz, who was returned to her home duty station where she faced no discipline.

73.     TSO Green and STSO Otilia Gaidos, both female, were also observed violating SOP, but neither was investigated or disciplined.

74.     TSO Green and D. Pherson attended the same recurrent training on April 8, 2014.

75.     TSO Green admitted that she failed to sample the bottom of bags, the same violation D. Pherson was accused of committing.

76.     While STSO Davis represented that D. Pherson failed to swab baggage entirely, this was never alleged in any of the investigations or proposed disciplinary actions concerning D. Pherson.

## VI. FIRST CAUSE OF ACTION

### Gender Discrimination in Violation of Title VII, 42 U.S.C. § 2000e

### Disparate Treatment – Count One

77.     Plaintiff repeats, re-alleges, and incorporates herein by reference every allegation contained in paragraphs 1 - 76 above, as if fully set forth.

78.     D. Pherson, was a member of a protected class based upon his gender, male.  At all times relevant to the discrimination alleged herein, D. Pherson's gender was observable and known to his supervisors and colleagues.

79.     Not only do D. Pherson's supervisors admit being aware of his gender, TSOs are subject to hiring and scheduling preferences based on gender, due to the need to perform pat-down searches of passengers, ensuring that the gender of each employee is at the top of managements mind.

80.    In 2014, the ratio of male to female TSOs at KRKS was such that there were more male TSOs than female TSOs.

81.    In April, 2014, covert surveillance was performed which resulted in the discovery of SOP violations committed by eight (8) TSOs.  Three were female, four were male, and the gender of the eighth is unknown.

82.    Investigations were performed into the violations of five of the eight employees, four males, D. Pherson, STSO Connolly, LTSO Walls, and TSO Garretson, and one female, STSO Holtz.

83.    Two female employees, TSO Green and STSO Gaidos, were not investigated and received no discipline as a result of their violations.

84.    STSO Connolly, LTSO Walls, and TSO Garrettson resigned before discipline could be proposed.

85.    STSO Holtz was sent back to her home airport where she received no discipline, only a non-disciplinary letter of caution.

86.    D. Pherson and TSO Green were both cited for failing to fully examine baggage.  Both admitted that they failed to fully and properly check deep enough into baggage to reach the seams of the main baggage compartments.

87.    Despite both engaging in the same violations of the SOP, TSO Green was given remedial training, issued no discipline, and not even investigated.  In contrast, D. Pherson was investigated, placed on immediate suspension, and removed from federal service.

88.    STSO Davis characterized TSO Green's actions as minor violations, yet characterized the same SOP violation by D. Pherson as a serious violation which endangered the flying public and could have resulted in catastrophe.

89.     Following the covert surveillance and investigations, all of the female employees remained employed in their roles, without discipline, while all of the male employees were removed from federal service, either through a removal, or through their own resignations in lieu of discipline.

90.     As a result of the Agency's actions, above, Defendant is liable to Plaintiff for those violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

91.     D. Pherson suffered serious economic loss, and mental and emotion distress as a result of this unlawful discrimination.

92.     Plaintiff is entitled to be fully compensated for all of the damages he sustained from the time of his removal until the date of his death, as well as for damages sustained by D. Pherson's estate since his death.

93.     D. Pherson's estate is now suffering and will continue to suffer monetary damages as the result of the Agency's discriminatory practices unless and until this Court grants relief.

**Disparate Impact – Count Two**

94.     Even if the Agency did not intentionally discriminate against D. Pherson based on his gender, the Agency's practices of considering an employee's gender is relation to hiring and scheduling has a clearly disparate impact on male employees.

95.     Despite D. Pherson and TSO Green engaging in the same SOP violations, STSO Davis minimized the seriousness of TSO Green's violations, to the point of not issuing any discipline, while exaggerating the seriousness of D. Pherson's violations to justify his removal.

96.     Of the employees observed violating the SOP, only female employees were exempt from investigation or discipline.

97.    The Agency's gender-based hiring criteria, and focus on retaining female employees, has resulted in a disparate impact on male employees who are held to a higher standard and subjected to harsher discipline than their female counterparts.

98.    As a result of the Agency's actions, above, Defendant is liable to Plaintiff for those violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

99.    D. Pherson suffered serious economic loss, and mental and emotion distress as a result of this unlawful discrimination.

100.    D. Pherson is entitled to be fully compensated for all of the damages he sustained from the time of his removal until the date of his death, as well as for damages sustained by D. Pherson's estate since his death.

101.    D. Pherson's estate is now suffering and will continue to suffer monetary damages as the result of the Agency's discriminatory practices unless and until this Court grants relief.

## VII. SECOND CAUSE OF ACTION

**Violation of Fourteenth Amendment Right to Due Process and Equal Protection of the Law**

**Disparate Treatment – Count Three**

102.    Plaintiff repeats, re-alleges, and incorporates herein by reference every allegation contained in paragraphs 1 – 101 above, as if fully set forth.

103.    D. Pherson, a male employee, has not been afforded the same rights as his female counterparts as a result of the Agency's stated gender-based hiring and retention policies.

104.    The need for the Agency to employ a minimum number of both male and female employees resulted in the Agency holding D. Pherson, a male, to a substantially higher standard than TSO Green, and other female employees.

105.    Holding D. Pherson to a higher standard than his female colleagues violate his rights to equal protection of the law under the Fourteenth Amendment to the United States Constitution.

106.    D. Pherson has suffered serious economic loss as a result of this unlawful violation of his right to equal protection under the law.

107.    D. Pherson is entitled to be fully compensated for all of the damage he has sustained.

### Disparate Impact – Count Four

108.    D. Pherson's situation, specifically, is indicative of the disparate impact that the Agency's gender-based hiring and retention policies have on male employees.

109.    The Agency admits that when a need arises for female employees, females will be given preferential consideration and treatment over males, even when a male employee may be better qualified.

110.    Here, all of the male employees observed violating the SOP have been removed or resigned from federal service in lieu of removal, while female employees making the same violations all still have their jobs, with their violations being minimized, or otherwise brushed off as insignificant.

111.    The Agency's failure to provide men and women with equal protections under the law with respect to their jobs, without intervention by the Court, will continue to result in a system where male employees are disadvantaged and denied equal protection.

112.    D. Pherson has suffered serious economic loss as a result of this unlawful violation of his right to equal protection under the law.

113.    D. Pherson is entitled to be fully compensated for all of the damage he has sustained.

### Violation of Procedural Due Process and Equal Protection – Count Five

114.   Plaintiff repeats, re-alleges, and incorporates herein by reference every allegation contained in paragraphs 1 – 113 above, as if fully set forth.

115.   In proposing D. Pherson's removal, the Agency cited nine (9) specific violations of the SOP and provided D. Pherson an opportunity to respond to those violations, and those violations only.

116.   In discussing the discipline issued to D. Pherson, STSO Davis noted that D. Pherson engaged in many more violations than those noted, but only the nine (9) noted were including in the Proposal so it would not appear that the Agency was trying to stack the deck and overcharge D. Pherson.  However, STSO Davis made it clear that the totality of D. Pherson's alleged violations played into the decision to remove him.

117.   Agencies are not permitted to deprive tenured public employees, like D. Pherson, of the property rights in their employment without providing a minimum due process of law – prior notice of the violations and an opportunity to respond to the charges supporting the proposed discipline.

118.   Because STSO Davis identified only nine (9) SOP violations, but considered more, D. Pherson was never provided with the required opportunity to respond to all of the charges against him.

119.   As a result of the Agency's actions, described above, Defendant is liable to D. Pherson suffered serious economic loss as a result of this unlawful violation of his rights.

120.   D. Pherson is entitled to be fully compensated for all of the damages he has sustained.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully requests that this Court enter a judgment:

(a).     Declaring that the acts and practices complained of herein are in violation of Title VII;

(b).     Enjoining and permanently restraining these violations of Title VII;

(c).     Reinstating D. Pherson to his former position for the purposes of life insurance and providing back pay until the date of D. Pherson's death.

(d).     Directing Defendants to take such action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Agency employees;

(e).     Awarding Plaintiff the costs of this action together with reasonable attorneys' fees, as provided by § 706(k) of Title VII, 42 U.S.C. § 2000e-6(k); and

(f).     Granting such other and further relief as this Court deems necessary and proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 39(b) of the Federal Rules of Civil Procedure, Plaintiff, by and through his attorney of record hereby demands a jury trial of all of the issues in the above matter.

DATED this 18th day of May, 2020.

Respectfully submitted.

MELVILLE JOHNSON, P.C.

Jennifer D. Isaacs
Georgia Bar No.: 902511

*/s/ George Melville Johnson*
George Melville Johnson
Georgia Bar No.: 393505

Dated: May 18, 2020